### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA AGENTS ALLIANCE, LLC,  )<br>    an Oklahoma limited liability company,  )<br>    )<br>    Plaintiff/Counterclaim  )<br>    Defendant,  )<br>    )<br>v.  )<br>    )<br>CHRIS TORRES, an individual,  )<br>DANIEL O'NEIL, an individual,  )<br>THE AFFINITIES GROUP, LLC, d/b/a  )<br>    TAG-THE AFFINITIES GROUP, an  )<br>    Oklahoma limited liability company,  )<br>JOHN DOE COMPANY, a Colorado  )<br>    corporation,  )<br>    )<br>    Defendants/Counterclaimants.  ) | Case No. CIV-17-1343-F |

### JOINT STATUS REPORT AND DISCOVERY PLAN

Date of Conference: **August 13, 2018 at 9:30 AM**

Appearing for Plaintiff: David A. Elder and Michael A. Furlong, HARTZOG CONGER CASON & NEVILLE LLP, 201 Robert S. Kerr Avenue, Suite 1600, Oklahoma City, Oklahoma 73102

Appearing for Defendant: D. Todd Riddles and Tyler J. Coble, CHEEK LAW FIRM, P.L.L.C., 311 North Harvey Avenue, Oklahoma City, Oklahoma 73102

**Jury Trial Demanded ☑ - Non-Jury Trial ☐**

1. **BRIEF PRELIMINARY STATEMENT**. State briefly and in ordinary language the facts and positions of the parties to inform the judge of the general nature of the case.

    Oklahoma Agents Alliance, LLC ("OAA"), is a membership network of independent insurance agents. Defendants Chris Torres ("Torres") and Daniel O'Neil ("O'Neil") are former employees of OAA. Defendant The Affinities Group, LLC, d/b/a TAG-The Affinities Group ("TAG") is a company founded by Torres and O'Neil after they left employment with OAA. OAA contends that TAG improperly competes with

OAA and that, as a result, Torres and O'Neil have breached their Employee Agreements with OAA, specifically including the confidentiality and non-solicitation provisions contained therein. OAA further contends that Torres and O'Neil misappropriated certain confidential and proprietary information and trade secrets of OAA by various means including computer file transmissions. Defendants deny OAA's claims.

Torres and TAG have brought counterclaims contending OAA has taken certain actions since the filing of this litigation that is meant to disparage Torres' and TAG's business in violation of the Oklahoma Deceptive Trade Practices Act. Torres and TAG also maintain that OAA is abusing the Court's process to improperly pressure Torres into forgiving unrelated debts owed by OAA's Chief Executive Officer, Tony Caldwell. Finally, Torres, individually, contends OAA's action against him is a breach of the contract under which he left his employment and all ownership interest in OAA. OAA denies Torres and TAG's counterclaims.

Though not yet asserted, with the Court's permission, O'Neil anticipates joining Torres' and TAG's counterclaims for violation of the Oklahoma Deceptive Trade Practices Act and for abuse of process.

2. **JURISDICTION**. State the basis on which the jurisdiction of the Court is invoked and any presently known objections.

This Court has jurisdiction over OAA's Defend Trade Secrets Act claims and Computer Fraud and Abuse Act claims under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). This Court has jurisdiction over OAA's Oklahoma Uniform Trade Secrets Act, misappropriation of tangible, proprietary property, and conspiracy claims because they implicate significant federal issues, including violations by Defendants of the federal Computer Fraud and Abuse Act and the Economic Espionage Act, 18 U.S.C. §§ 1030, 1831 *et seq.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). This Court has supplemental jurisdiction over OAA's state law claims under 28 U.S.C. § 1367(a) because OAA's state law claims form part of the same case or controversy as OAA's Defend Trade Secrets Act claims and Computer Fraud and Abuse Act claims.

This Court has supplemental jurisdiction over Torres' and TAG's counterclaims under 28 U.S.C. § 1367(a). The Court has previously confirmed that it has supplemental jurisdiction over Torres and TAG's counterclaim. (Order at 6-8 [Doc. No. 41].)

3. **STIPULATED FACTS**. List stipulations as to all facts that are not disputed, including jurisdictional facts.

1.   OAA is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma.

2. Torres and O'Neil are individuals residing in Oklahoma.

3. TAG is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma.

4. This Court has personal jurisdiction over OAA, Torres, O'Neil, and TAG.

5. Venue is proper in this Court.

6. OAA was co-founded by Tony Caldwell in 2000.

7. OAA is a master agency under the Strategic Insurance Agents Alliance network, a national insurance agency alliance.

8. Torres was employed by OAA in various roles from April 2000 until May 2015. From 2003-2015, Torres was the president of OAA.

9. On May 7, 2013, Torres signed an Employee Agreement with OAA. Exhibit 1 to OAA's First Amended Complaint [Doc. No. 8-1] is a true and correct copy of Torres' Employee Agreement.

10. O'Neil was employed by OAA in sales and marketing from June 2005 until August 2015.

11. On May 7, 2013, O'Neil signed an Employee Agreement with OAA "under protest." Exhibit 2 to OAA's First Amended Complaint [Doc. No. 8-2] is a true and correct copy of O'Neil's Employee Agreement.

4. **CONTENTIONS AND CLAIMS FOR DAMAGES OR OTHER RELIEF SOUGHT**.

    a. Plaintiff:

OAA is a membership network of independent insurance agents. The collective strength of OAA's membership enables OAA to gain superior market access and other opportunities for its members that would not be available to them acting alone. The success of OAA depends, in large part, on attracting and retaining a membership base sufficient to support OAA's aggregation model and on maintaining the confidentiality and exclusivity of the opportunities that OAA offers its members.

The methods, formulas, techniques, processes, and procedures by which OAA leverages its membership base to obtain superior market access and other opportunities

are proprietary and confidential to OAA. OAA has developed the same over the course of more than seventeen years of experience operating a membership-based entity and developing and maintaining relationships in the insurance industry. Confidential and proprietary information of OAA includes its membership development processes, its formulation of its Independent Strategic Member Agreement, and bonus/profit sharing data and formulas with respect to business written by OAA members with various carriers.

OAA has entered into a number of highly confidential relationships with industry participants in order to provide superior market access and other opportunities to its members. For example, OAA has a confidential contract with the Strategic Insurance Agency Alliance ("SIAA"), a national independent insurance agency alliance, which allows OAA to connect its members to exceptional and exclusive market opportunities. SIAA and OAA apply proprietary formulas (e.g., aggregation formulas and member bonus/profit sharing formulas) to return greater value to their members than competitors. SIAA and OAA have confidential contracts with a large number of insurance carriers to secure such benefits for OAA's members. OAA also enters into confidential Independent Strategic Member Agreements with its members.

OAA takes several concrete steps to protect the confidentiality and exclusivity of its proprietary information. OAA adheres to a strict protocol in marketing to prospective members, whereby each is required to sign a confidentiality agreement prior to OAA giving a sales presentation and furnishing the prospective member with a copy of OAA's Independent Strategic Member Agreement. OAA prohibits its sales personnel from giving a presentation without a signed confidentiality agreement from the prospective member. OAA also requires its employees to maintain the confidentiality of OAA's proprietary information.

Torres and O'Neil each signed Employee Agreements with confidentiality provisions. The Employee Agreements also contained non-solicitation covenants prohibiting the solicitation of OAA's members for a term of three years.

OAA derives significant independent economic value from its internally developed and proprietary membership aggregation methods, formulas, techniques, processes, and procedures not being generally known to and not being readily ascertained through proper means by other entities. Drawing on its many years of experience, OAA knows what works to operate a successful membership-aggregation business model. OAA is able to retain existing members and attract prospective members based in part on the exclusive opportunities and resources that OAA is able to offer because of its confidential and proprietary methods, formulas, techniques, processes, and procedures.

Torres was an employee of OAA from April 2000 until May 2015, when he abruptly resigned. At the time of his departure, Torres was the president of OAA. On or

about May 7, 2013, Torres entered into an Employee Agreement with OAA. In his Employee Agreement, Torres promised not to disclose OAA's confidential information to third parties or to "use Confidential Information for any purpose except to perform my employment duties for OAA." The confidentiality provisions of Torres' Employee Agreement apply in perpetuity. Torres also promised not to solicit OAA's members "for a period of three (3) years following the date of termination of employment with OAA" and not to "[d]ivulge the names of OAA's policyholders or accounts to any other person, firm, agency or corporation."

O'Neil was an employee of OAA from June 2005 until August 2015. On or about May 7, 2013, O'Neil entered into an Employee Agreement with OAA with substantially the same terms as Torres' Employee Agreement.

After the departures of Torres and O'Neil, they formed TAG to compete with OAA's member aggregation business.

OAA engaged the services of Avansic, Inc. ("Avansic"), a third party e-discovery and digital forensics vendor, to conduct a forensic examination of Torres' and O'Neil's digital activity before departing OAA. Avansic examined OAA's server and the OAA laptop that was assigned to Torres during his employment. Avansic determined that during the two weeks preceding Torres' abrupt departure from OAA in May 2015, he downloaded a number of proprietary and confidential OAA documents onto one or more flash drives, including sales process and member recruiting documents.

Torres has admitted that he also uploaded essentially all files from his OAA laptop to a cloud-based storage system. Avansic determined Torres almost certainly uploaded a large number of OAA's documents to Dropbox in 2015. Avansic provided a list of uploaded documents to OAA and OAA determined that the documents pertain to nearly every aspect of OAA's business including confidential SIAA documents; copies of Independent Strategic Member Agreements, all of which are confidential; other OAA contracts and agreements; lists of member details including contact information; internal meeting agendas; sales and marketing plans; and "strengths, weaknesses, opportunities, and threats" analyses. The documents are all of a nature that would make them highly valuable to an enterprise competing with OAA. Torres did not have OAA's permission to access and download any of OAA's files to his personal devices or accounts or by means of said devices or accounts. There would have been no need for OAA to grant Torres permission to do so and OAA would not have granted permission if Torres had asked.

In conversations between OAA's counsel and Daniel O'Neil's father, Michael O'Neil, he admitted that Daniel O'Neil also took a large number of OAA's documents when he departed OAA. Michael O'Neil is an attorney who was representing a departing member of OAA. Michael O'Neil opined that Daniel O'Neil took the documents to

assist him in a position he held with Argenia Insurance immediately after he left OAA. Regardless of O'Neil's motive, he did not have OAA's permission to take documents with him when he departed OAA.

It is also evident that Torres and/or O'Neil have shared OAA's confidential and proprietary information and trade secrets with TAG. On March 31, 2016, O'Neil sent an email to Torres and Cole Richardson, a principal of TAG, including to Torres' old OAA email address, which brought the email to the attention of OAA. The email said, "Let me know what you think." O'Neil attached two documents to the email. The first, titled "Process for a Beneficiary Member Agreement", wrongfully duplicated OAA's member marketing process without OAA's knowledge or consent, including OAA's proprietary model of connecting members to various market opportunities. The second, titled "TAG Application", was a member application that was similar to OAA's member application.

The full extent of Torres' and O'Neil's theft and misuse of OAA's confidential and proprietary information and trade secrets is presently unknown, warranting the relief the parties agreed to in the Agreed Eradication Order [Doc. No. 48].

OAA has learned of multiple instances in which Torres and O'Neil, individually and on behalf of TAG, have solicited OAA's members to depart OAA and/or transfer their membership to TAG. For example, in contract termination negotiations with an OAA member, the member abruptly changed his position based on alleged knowledge of OAA's confidential internal accounting practices with respect to bonuses/profit sharing with members. To the best of OAA's knowledge, the member obtained the information on which he based his change of position from Torres and O'Neil.

In addition, after Torres and O'Neil departed OAA, sales personnel of OAA began to report multiple <u>prospective</u> members had detailed knowledge of OAA's Independent Strategic Member Agreements and financial dealings with its members. OAA is not aware of anyone other than Torres and/or O'Neil who would have access to or share this information with OAA's prospective members. OAA has knowledge of at least one prospective member that chose TAG over OAA based in whole or in part on representations by Defendants regarding OAA that involved disclosure of proprietary or confidential information or trade secrets.

As a result of Defendants' conduct, OAA has brought claims against Torres and O'Neil for breach of their Employee Agreements, violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, unfair competition, and injunctive relief, and claims against all Defendants for violation of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, violation of the Oklahoma Uniform Trade Secrets Act, 78 O.S. §§ 85 *et seq.*, misappropriation of intangible, personal property, tortious interference with contract, tortious interference with prospective economic advantage, and conspiracy. OAA seeks eradication of its proprietary and confidential information and trade secrets

from all of Defendants' devices and accounts, injunctive relief enforcing the Employee Agreements and prohibiting Defendants from using OAA's proprietary and confidential information and trade secrets in any way, and actual, consequential, and punitive damages.

    b.    <u>Defendants</u>:

Defendants deny all liability OAA has asserted against them and incorporate herein their respective Answers and Affirmative Defenses to OAA's First Amended Complaint. Defendants' Affirmative Defenses include the following:

i. OAA's claims for unfair competition, tortious interference with contract, and tortious interference with prospective economic advantage are barred to the extent they seek a remedy based upon Defendants' alleged misappropriation of "trade secrets" because they are displaced by the Oklahoma Uniform Trade Secrets Act, Okla. Stat. tit. 78 §§ 85-94.

ii. OAA's claims for breach of the "Confidential Information" and "Nondisclosure" provisions of Defendants' respective Employment Agreements is precluded by the Employment Agreements' plain language, which excludes from the definition of "Confidential Information" certain material OAA is considering proprietary.

iii. The "Confidential Information" and "Nondisclosure" provisions of Defendants' respective Employment Agreements are vague and ambiguous to the point of unconscionability and therefore unenforceable.

iv. The "Confidential Information" and "Nondisclosure" provisions of Defendants' respective Employment Agreements, as OAA is interpreting them, are void as an unreasonable restraint on trade.

v. The "Confidential Information" and "Nondisclosure" provisions of Defendants' respective Employment Agreements, as OAA is applying them, are void, where OAA is enforcing them against Defendants to exempt itself from responsibility for defrauding its own members. Okla. Stat. tit. 15 § 212.

vi. Some or all of the relief OAA seeks under the federal Computer Fraud and Abuse Act may be barred under the applicable limitations period.

vii. Some or all of the relief OAA seeks under the federal Defend Trade

       Secrets Act is precluded, because some or all of the conduct and damage OAA alleges occurred before that Act's effective date of May 11, 2016.

viii.    The "Non-piracy, Non-compete Agreement" provisions in the Defendants' respective Employment Agreements are void, in whole or in part, under Oklahoma law, Okla. Stat. tit. 15 §§ 217, 219A.

ix.    OAA's claims against Torres arising out of his Employment Agreement are released, waived, and/or extinguished by operation of written contract entitled "Confidential Purchase, Sale and Release Agreement" [Doc. No. 23 (SEALED)].

x.    OAA's actions arising out of misappropriation and/or misuse of trade secret information fail to state claims because OAA's allegations fail to give Defendants' notice of what information OAA deems "trade secrets."

Further, Defendants Torres and TAG (and, with the Court's leave, O'Neil) assert counterclaims against OAA, incorporated herein in full, and summarized as follows:

i.    Defendants contend OAA has violated the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78 §§ 51-56, after commencing this action. Defendants allege OAA transmitted a letter and/or email to its members disparaging Defendants and their business by misleading members into thinking Defendants have violated the law, then discouraging those members from having any contact with or involving Defendants. Defendants contend OAA's action was done with intent to harm Defendants' business and reputation and to impair Defendants' ability to meaningfully litigate its defenses in this action (e.g., limiting Defendants' ability to communicate with witnesses, who, but for the letter, would be willing to so communicate). Defendants seek injunctive relief to enjoin OAA's deceptive practices and further seek actual damages for the value of any lost business arising therefrom.

ii.    Defendants contend OAA is abusing this Court's process in an effort to extort Torres into forgiving certain debts owed by OAA's Chief Executive Officer, Mr. Tony Caldwell. Caldwell and his investment company owe certain debts to Torres and his investment company arising out of Caldwell's purchase of Torres' interests in OAA and another company (Arkansas Agents Alliance) when Torres left OAA's employment. Such debts are wholly unrelated to the matters presented in OAA's action. Upon reasonable information and belief, Defendants believe that, if Torres had agreed to discharge in full Caldwell's debts,

        OAA would not have brought suit against Defendants. For OAA's abuse of process, Defendants seek damages including, but not limited to, litigation defense costs they are accruing while defending this action, damages to Defendants' reputation in the business community as a result of OAA's filing this lawsuit, related mental and emotional distress and suffering, and punitive damages.

    iii.    Defendant Torres, individually, asserts a breach of contract counterclaim arising out of the "Confidential Purchase, Sale and Release Agreement" [Doc. No. 23 (SEALED)] he entered into when selling all of his interest in OAA. Under that Agreement, Torres' prior obligations, promises, and agreements made in connection with OAA's operations – which would include his Employment Agreement – were released as of the Agreement's Effective Date of January 1, 2015. The Agreement also contains a covenant not to sue over any such released obligations, promises, and agreements. Torres contends that OAA breached the covenant not to sue provision by bringing suit over alleged violations of his then-released Employment Agreement. Torres seeks damages including, but not limited to, the litigation costs he has incurred and continues to incur in this action. Upon information and belief, Torres also seeks economic damages arising out of any negative impacts OAA's suit may have on his and TAG's business prospects in the future.

5. **APPLICABILITY OF FED. R. CIV. P. 5.1 AND COMPLIANCE**.
Do any of the claims or defenses draw into question the constitutionality of a federal or state statute where notice is required under 28 U.S.C. § 2403 or Fed. R. Civ. P. 5.1?
    ☐ Yes ☑ No

6. **MOTIONS PENDING AND/OR ANTICIPATED** (include date of filing, relief requested, and date responsive brief to be filed).

    **OAA has filed a Motion to Enforce Agreed Eradication Order [Doc. No. 50], to which Defendants have responded [Doc. No. 57]. The Court has set it for hearing on August 13, 2018.**

    **All parties may file additional motions with respect to the Agreed Eradication Order [Doc. No. 50] as the search and eradication process unfolds.**

    **O'Neil anticipates filing a motion for leave to amend his answer to include an omitted counterclaim that will mirror, in part, the counterclaims asserted by Torres and TAG under the Oklahoma Deceptive Trade Practices Act and for abuse of**

**process.  O'Neil will submit such motion on or before any deadline for amendments to pleadings set by the Court.  OAA anticipates it will oppose this motion.**

**All parties contemplate filing motions for summary judgment at the appropriate time as provided by the scheduling order entered by the Court.**

7. **COMPLIANCE WITH RULE 26(a)(1)**.  Have the initial disclosures required by Fed. R. Civ. P. 26(a)(1) been made?   ☑ Yes      ☐ No
   If "no," by what date will they be made?

8. **PLAN FOR DISCOVERY**.

   A. The discovery planning conference (Fed. R. Civ. P. 26(f)) was held on **July 26, 2018 at 10:00 am**.

   B. The parties anticipate that discovery should be completed within **6** months.

   C. In the event ADR is ordered or agreed to, what is the minimum amount of time necessary to complete necessary discovery prior to the ADR session? **Four months**.

   D. Have the parties discussed issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced, pursuant to Fed. R. Civ. P. 26(f)(3)(C)?

      ☑ Yes ☐ No

   E. Have the parties discussed issues relating to claims of privilege or of protection as trial-preparation material pursuant to Fed. R. Civ. P. 26(f)(3)(D)?

      ☑ Yes ☐ No

      To the extent the parties have made any agreements pursuant to Fed. R. Civ. P. 26(f)(3)(D) and Fed. R. Civ. P. 502(e) regarding a procedure to assert claims of privilege/protection after production and are requesting that the court include such agreement in an order, please set forth the agreement in detail below and submit a proposed order adopting the same.

      **On May 7, 2018, the Court approved the Agreed Protective Order submitted by the Parties [Doc. No. 43].**

    F.    Identify any other discovery issues which should be addressed at the scheduling conference, including any subjects of discovery, limitations on discovery, protective orders needed, or other elements (Fed. R. Civ. P. 26(f)) which should be included in a particularized discovery plan.

**OAA has filed a Motion to Enforce Agreed Eradication Order [Doc. No. 50], to which Defendants have responded [Doc. No. 57]. The Court has set it for hearing on August 13, 2018.**

9. **ESTIMATED TRIAL TIME**: **3-5 days.**

10. **BIFURCATION REQUESTED**: ☐ Yes ☒ No

11. **POSSIBILITY OF SETTLEMENT**: ☐ Good ☒ Fair ☐ Poor

12. **SETTLEMENT AND ADR PROCEDURES**:

    A.    Compliance with LCvR 16.1(a)(1) - ADR discussion: ☒ Yes ☐ No

    B.    The parties request that this case be referred to the following ADR process:

        ☐ Court-Ordered Mediation subject to LCvR 16.3
        ☐ Judicial Settlement Conference
        ☐ Other _____
        ☒ None - the parties do not request ADR at this time.

**The Parties have discussed ADR and may request a judicial settlement conference or other form of ADR at some future time. The Parties believe it is necessary to complete the search and eradication process under the Agreed Eradication Order [Doc. No. 48] before determinations can be made regarding the viability of settlement.**

13. Parties consent to trial by Magistrate Judge? ☐ Yes ☒ No

14. Type of Scheduling Order Requested. ☒ Standard - ☐ Specialized (If a specialized scheduling order is requested, counsel should include a statement of reasons and proposal.)

**The parties respectfully note the process and deadlines provided for in the Agreed Eradication Order [Doc. No. 48] may bear on the scheduling of this matter, in the Court's discretion.**

Submitted this 9th day of August, 2018.

Respectfully submitted this 9th day of August, 2018, by:

| | |
|---|---|
| s/ Michael A. Furlong | s/ Tyler J. Coble |
| David A. Elder, OBA # 201687 | (Signed by filing Attorney with permission of Attorney) |
| Michael A. Furlong, OBA # 31063 | Tim N. Cheek, OBA # 11257 |
| HARTZOG CONGER CASON & NEVILLE | D. Todd Riddles, OBA # 15143 |
| 1600 Bank of Oklahoma Plaza | Gregory D. Winningham, OBA # 22773 |
| 201 Robert S. Kerr Avenue | Tyler J. Coble, OBA # 30526 |
| Oklahoma City, Oklahoma 73102 | CHEEK LAW FIRM, P.L.L.C. |
| (405) 235-7000 | (405) 996-3043 (fax) | 311 North Harvey Avenue |
| delder@hartzoglaw.com | Oklahoma City, Oklahoma 73102 |
| mfurlong@hartzoglaw.com | (405) 272-0621 | (405) 232-1707 (fax) |
| **ATTORNEYS FOR PLAINTIFF OKLAHOMA AGENTS ALLIANCE, LLC** | tcheek@cheeklaw.com |
| | triddles@cheeklaw.com |
| | gwinningham@cheeklaw.com |
| | tcoble@cheeklaw.com |
| | **ATTORNEYS FOR DEFENDANTS CHRIS TORRES, DANIEL O'NEIL and THE AFFINITIES GROUP, LLC, d/b/a TAG-THE AFFINITIES GROUP** |