## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA AGENTS ALLIANCE, LLC, an Oklahoma limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>CHRIS TORRES, an individual, DANIEL O'NEIL, an individual, THE AFFINITIES GROUP, LLC, d/b/a TAG-THE AFFINITIES GROUP, an Oklahoma limited liability company, JOHN DOE COMPANY, a Colorado corporation,<br>        Defendants. | Case No. CIV-17-1343-F |

## DEFENDANTS' MOTION TO QUASH AND FOR PROTECTIVE ORDER REGARDING SUBPOENAS ISSUED TO MOBILE SERVICE PROVIDERS

COME NOW Defendants Chris Torres ("Torres"), Daniel O'Neil ("O'Neil"), and The Affinities Group, LLC d/b/a TAG-The Affinities Group ("TAG"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 26(c) and 45(d), respectfully move this Court to quash five (5) subpoenas Plaintiff Oklahoma Agents Alliance, LLC ("OAA") proposes to serve upon five (5) different mobile/cellular service providers, (*see generally* Not. Subpoena [Doc. 72]), and to further enter a protective order precluding such discovery. The proposed subpoenas seek discovery that is prohibited under federal law, that is irrelevant and/or overbroad, and that is not proportional to the needs of this case when considering the burden imposed on Defendants' privacy interests.

Pursuant to LCvR37.1, Defendants advise that on November 15, 2018, the parties'

respective counsel personally met and conferred in good faith regarding the matters asserted in this Motion. Despite a sincere attempt to resolve their differences, and while certain minor agreements were made,[1] no full accord was reached.

Further, as reflected in the Court's Notice of Electronic Filing, OAA provided advanced notice of the subpoenas at issue by filing its Notice of Subpoena [Doc. 72] at 8:15 PM CST on November 9, 2018. Under LCvR45.1(b), Defendants had seven (7) days from that date to submit this Motion to preclude OAA's service of the subpoenas on November 16, 2018. During the parties' November 15 discovery conference, and to give them more time to discuss their disagreements over the subpoenas, OAA agreed to delay service of their subpoenas beyond the original November 16 date, and the parties further agreed to extend the seven-day deadline under LCvR45.1(b) to end of day November 20, 2018. This Motion is filed within that agreed-upon timeframe. Accordingly, pursuant to the parties' agreement and LCvR45.1(b), Defendants also request this Court enter an order precluding service of the subpoenas at issue until this Court determines the matters herein.

In support hereof, Defendants respectfully submit as follows:

## BACKGROUND

OAA has brought this action against the Defendants alleging, summarily, that Defendants are improperly competing with OAA's business via use of OAA's purported

---

[1] In particular, OAA agreed to delay the originally-planned November 16 service date of its subpoenas to facilitate further negotiation concerning the subpoenas. Additionally, after Defendants' counsel disclosed to OAA's counsel the two providers Defendants used for their mobile service (AT&T and Sprint), OAA agreed to withhold service – for now – upon the other providers at issue (Verizon, T-Mobile, and U.S. Cellular).

trade secret and proprietary confidential information and in violation of certain employment contracts Torres and O'Neil had entered into during their previous employment with OAA. Defendants deny OAA's claims have any merit and have asserted counterclaims of their own.  This matter is currently governed by the Court's Scheduling Order entered on August 13, 2018 [Doc. 61] which sets a discovery completion deadline of July 15, 2019.

As the Court is aware, the parties' actions in this case in recent months have largely involved working through the process provided for in the Court's Agreed Eradication Order entered May 29, 2018 [Doc. 48] – something that unfortunately has taken more time and resources than Defendants (and probably OAA) anticipated at the time of that Order's entry. Nevertheless, amid those ongoing efforts, the parties have started engaging in usual discovery practice.  Specifically, on November 1, 2018, Defendants served their first set of discovery requests upon OAA, and on November 9, 2018, OAA served its first set of discovery requests upon Torres and O'Neil.  Assuming no extensions are needed, OAA's discovery responses are due December 5, 2018, and Torres' and O'Neil's discovery responses are due December 13, 2018.

Apart from these discovery actions, OAA also intends to serve the subpoenas at issue in this Motion.  (*But see* footnote 1, *supra*.)  The five (5) subpoenas at issue are each directed to a major mobile/cellular service provider:  Verizon Wireless [Doc. 72-1], T-Mobile [Doc. 72-2], Sprint [Doc. 72-3], AT&T [Doc. 72-4], and U.S. Cellular [Doc. 72-5]. These subpoenas are identical in the information they seek.  Summarily, each subpoena seeks the following information regarding Torres, O'Neil, and TAG, respectively:

      1.     Subscriber  information,  call  details  and  records,  and  call

identifications, with cellular site and GPS information (Items Nos. 1, 4, and 7 for each subpoena);

      2.      Short Message Service and Multimedia Messaging Service – i.e., text message service – detail records (Items Nos. 2, 5, and 8 for each subpoena); and

      3.      Bills and/or invoices issued (Items Nos. 3, 6, and 9 for each subpoena).

The subpoenas seek this information for all devices that may be registered to Torres, O'Neil, or TAG, regardless of whether such devices are used for personal or business purposes. (Not that such distinction would matter – Torres and O'Neil use their respective mobile phones for both personal and business purposes; neither individual has a "business phone," and TAG does not have its own account or registration with any mobile service provider.)

For Torres and O'Neil, the subpoenas seek the above-described information from January 1, 2015, to the present. For TAG, the subpoenas seek the same information from November 1, 2015, to the present. Finally, each subpoena commands the provider to respond no later than November 30, 2018, at 5:00 p.m. – days before any party in this action must respond to the first-round written discovery propounded upon them.

## ARGUMENT AND AUTHORITY

The scope of discovery obtained via subpoena is the same for all discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1);

*see XPO Logistics Freight, Inc. v. YRC, Inc.*, Nos. 16-mc-220-JAR-TJJ, 5:16-cv-2247-JFL, 2016 WL 6822661, *4 & n.11 (D. Kan. Nov. 18, 2016) (unreported) (noting scope of discovery the same under Rule 26 and Rule 45).   Despite that broad scope, a court must limit the frequency or extent of discovery otherwise allowed if, among other reasons, it determines the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"  Fed. R. Civ. P. 26(b)(2)(C).  For good cause, a court is also empowered to enter a range of orders governing discovery to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c).  Such orders include forbidding the discovery outright, forbidding inquiry into certain matters, prescribing different discovery methods, or specifying the time for such discovery.  *Id.*

     In this case, the subpoenas OAA intends to issue seek federally protected, content-based electronic communications, requiring this Court to quash the same and enter an order forbidding such discovery.  Further, the subpoenas' demand for production of all subscriber, call, and messaging data – inclusive of cell site data, regardless of who such calls or messages were with, and for a period of over three (3) years – seeks information that is unacceptably overbroad when considering Defendants' privacy interests, further warranting an order quashing the subpoenas and precluding discovery thereon.  Finally, the subpoenas' demand for invoicing and billing records is wholly irrelevant to this case and should be precluded.

I.   THE SUBPOENAS' DEMAND FOR CALL AND MESSAGE CONTENT IS BARRED BY
     THE STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701-2713.

As noted, each of the subpoenas seek call and message detail information for

Torres, O'Neil, and TAG.   During the parties' November 15 discovery conference,

OAA's counsel advised that, with these subpoenas, OAA intends to obtain the content of

Defendants' call and message information to the extent the providers have it.   This

request is prohibited by federal law.

"The Stored Communications Act ("SCA") generally prohibits providers of

communication services from divulging private communications to certain entities and/or

individuals."   *Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 991 (C.D.

Cal. 2012) (citation and internal quotation marks omitted).   The level of prohibition

varies depending on if the entity at issue is an "electronic communication service" or a

"remote computing service."   *See* 18 U.S.C. § 2702(a).   A wireless communication

provider, like the providers at issue here, is classified as an "electronic communication

service."   *Mintz*, 885 F. Supp. 2d at 991; *see also Council on American-Islamic Relations*

*Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 334 (D.D.C. 2011) (noting broad

definition of "electronic communication service" includes "telephone companies and e-

mail service providers" but is "not so narrowly confined").

Under the SCA, an electronic communication service "shall not knowingly

divulge to any person or entity the contents of a communication while in electronic

storage by that service" unless a specific exception applies.   18 U.S.C. §§ 2702(a)(1), (b).

Such exceptions include, e.g., disclosure to the addressee or intended recipient of the

communication, or disclosure as may be "necessarily incident to the rendition of the service[.]" *Id.* §§ 2702(b)(1), (5).   However, the SCA provides no exception for civil discovery subpoenas, thus electronic communication service providers – like mobile phone providers – are prohibited from providing call and message content, even if subpoenaed in a civil action.  *Mintz*, 885 F. Supp. 2d at 991-92 (collecting cases); *see Hawaii Regional Council of Carpenters v. Yoshimura*, Civ. No. 16-00198 ACK-KSC, 2017 WL 738554, *3-4 (D. Haw. Feb. 17, 2017) (unreported) (noting communication content not discoverable via civil subpoena, including generalized request for text message data that "arguably" went "beyond mere records of transmission"); *see also Clark v. Johnson*, No. 14-CV-582-JED-PJC, 2015 WL 4694045, *2 n.3 (N.D. Okla. Aug. 6, 2015) (unreported) (noting SCA precludes provider's disclosure of "substantive contents" of communications).

In this case, the broad phrasing of OAA's subpoenas encompass the substance of Torres', O'Neil's, and TAG's calls and communications, and OAA has confirmed its intention to seek the content of Defendants' communications via these subpoenas.  As stated above, the SCA forbids disclosure of such communications absent an exception, none of which are applicable here.  Accordingly, to the extent OAA's subpoenas demand production of the content of Defendants' communications, this Court should quash and forbid the same.

## II.   THE SUBPOENAS' DEMAND FOR NON-CONTENT INFORMATION IS OVERBROAD AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE, ESPECIALLY WHEN CONSIDERING THE PRIVACY INTERESTS INHERENT IN MOBILE PHONE DATA.

Beyond content-based information protected under the SCA, the subpoenas at issue

also seek subscriber information, call information and details, message detail records, and "cellular site and GPS information" from January 1, 2015 (for Torres and O'Neil) or November 1, 2015 (for TAG) to the present.  As noted, the subpoenas are not narrowed to seek out information concerning only Torres' and O'Neil's business-related activities (nor could they be, as Torres and O'Neil each use their own cell phone for personal and business purposes), thus the subpoenas seek, essentially, all available "mobile phone"-related information from Defendants regardless of whether it has anything to do with the issues in this case.  Even if relevant information may be located somewhere within these requests, they are substantially overbroad when considering the issues in this case and, as described just below, the sensitivity of the data sought.

"A party has a personal interest in securing the privacy of his cell phone records." *Hawaii Regional*, 2017 WL 738554 at *2 (citations and internal quotation marks omitted); *accord Clark*, 2015 WL 4694045 at *2 (collecting cases).  Even if such interest is not constitutionally protected, a party may "nevertheless be entitled to protection against unwarranted public disclosure resulting from discovery in federal civil litigation."[2] *Syposs v. United States*, 181 F.R.D. 224, 227 (W.D.N.Y. 1998). Here, the fact OAA seeks information pertaining to mobile phone use raises important privacy concerns that must be reconciled with the "proportionality" factors set forth in Rule 26(b)(1), including the issues at stake, the importance of the discovery in resolving those issues, and whether the burden imposed by the discovery outweighs the benefit.  *See also* Fed. R. Civ. P. 26(c)(1) (noting

---

[2] This privacy interest is what gives Defendants standing to challenge the subpoenas at issue. *Hawaii Regional*, 2017 WL 738554 at *2; *Clark*, 2015 WL 4694045 at *1-2.

protective order proper to prevent "annoyance, embarrassment [or] oppression").  In recent years – particularly this year – the U.S. Supreme Court has emphasized the importance of a mobile phone customer's privacy interest in the data generated simply from having and using a mobile phone, the most important of which is the "cellular site and GPS information" sought in the subpoenas here.

In recent times, modern cell phones have become "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy."[3]  *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 2484 (2014).  As noted in *Riley*, in 2013, nearly three-quarters of smart phone users reported being within five feet of their phones most of the time, "with 12% admitting that they even use their phones in the shower."  *Id.* at 2490.  And, when considering the data a modern mobile phone stores and generates, it would be no exaggeration to say "that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate."  *Id.*

Cell phones perform their "wide and growing variety of functions by connecting to a set of radio antennas called 'cell sites.'"  *Carpenter v. United States*, ___ U.S. ___, 138 S. Ct. 2206, 2211 (2018).  As the Court has explained,

> Cell phones continuously scan their environment looking for the best signal, which generally comes from the closest cell site. Most modern devices, such as smartphones, tap into the wireless network several times a minute whenever their signal is on, even if the owner is not using one of the phone's

---

[3] As the *Riley* Court noted, "cell phone" is a "misleading shorthand" when considering such devices are just "minicomputers that also happen to have the capacity to be used as a telephone."  134 S. Ct. at 2489.

features. Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI). The precision of this information depends on the size of the geographic area covered by the cell site. The greater the concentration of cell sites, the smaller the coverage area. As data usage from cell phones has increased, wireless carriers have installed more cell sites to handle the traffic. That has led to increasingly compact coverage areas, especially in urban areas.

Wireless carriers collect and store CSLI for their own business purposes…. While carriers have long retained CSLI for the start and end of incoming calls, in recent years phone companies have also collected location information from the transmission of text messages and routine data connections. Accordingly, modern cell phones generate increasingly vast amounts of increasingly precise CSLI.

*Carpenter*, 138 S. Ct. at 2211-12.

CSLI, in the Court's words, "is detailed, encyclopedic, and effortlessly compiled," and it gives one the ability "to chronicle a person's past movements through the record of his cell phone signals." *Id.* at 2216. Such data therefore gives rise to a great privacy concern: Such data allowing its holder, if it chooses and has the ability to do so, to achieve "near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 2218.

In this case, Defendants' privacy concerns in their cell phone data outweigh OAA's need for the information sought in its subpoenas. Items Nos. 1, 4, and 7 of each subpoena seek the subscriber information and call data, including the above-described CSLI, for each of the Defendants for a time period in excess of three years. Items Nos. 2, 5, and 8 seek similar data as it relates to text and related multimedia messages. The intrusion such requests make into the Defendants' lives – including their personal lives –

shows how disproportional this request is as compared to the needs of this case.  Given the allegations asserted, OAA can seek to discover what contact Defendants may have had with OAA members and prospective members, but the information sought with these subpoenas goes way beyond that and imposes an excessive annoyance and burden on Defendants' privacy interests – especially when considering initial rudimentary discovery between the parties themselves has not even been completed, and further when considering the parties have until July 2019 to conduct discovery.[4]  *See Howard v. Seadrill Americas, Inc.*, Civ. No. 15-2441, 2016 WL 7012275, *4 (E.D. La. Dec. 1, 2016) (unreported) (plaintiff privacy interests in cell phone records outweighed defendant's need for them to prove time when plaintiff sought counsel, particularly where time for discovery allowed defendant to seek such information via other means).

Moreover, even if OAA limited its requests to non-content call and message data only and omitted CSLI, such request would still require production of a log of every call or message each Defendant has ever had with anyone for over three years, inclusive of all personal communications and regardless of whether the communication involved OAA or not.  Such requests are overbroad in scope and must be precluded.  *See XPO Logistics*, 2016 WL 6822661 at *7 (subpoena request to former employee-defendant's competitor employer seeking, in pertinent part, "documents reflecting all cell phones and landlines

---

[4] The parties' respective first sets of discovery requests to each other seek the identities of OAA members and prospective members which OAA alleges Defendants have improperly contacted.

[former employee] has used for [competitor]'s business" was irrelevant, overbroad, and unreasonably duplicative in light of other discovery).

Even before the U.S. Supreme Court's recent discussions involving mobile phone privacy, District Judge Miles-LaGrange addressed a similar situation in *Herff Jones, Inc. v. Oklahoma Graduate Services, Inc.*, No. CIV-06-709-M, 2007 WL 2344705 (W.D. Okla. Aug. 15, 2007) (unreported), and quashed the subpoenas there at issue.  In that case, the plaintiff filed suit for breach of contract against its former sales representatives, alleging the representatives were improperly competing with plaintiff's business and, as part of such improper competition, were continuing to contact plaintiff's customers using plaintiff's "confidential customer list."  *Id.* at *1-2.  The plaintiff then issued subpoenas to the representatives' respective mobile phone providers, demanding production of, *inter alia*, subscriber applications, GPS location data, and call connection records.  *Id.* at *2-3.  The plaintiff contended the information sought was relevant to its breach of contract claims because it would show how the representatives had stopped fully performing on behalf of plaintiff and were instead working for plaintiff's competitor.  *Id.* at *3-5.  Nevertheless, the court concluded that plaintiff's request for things such as subscriber data, GPS data, and billing records were not relevant to plaintiff's claims at all, and that the remaining subjects in the subpoenas, such as call logs and account records, were too overbroad to allow production.  *Id.*  The court therefore quashed the subpoenas and entered a protective order precluding the discovery sought therein.  *Id.* at *5.

In this case, and like the subpoenas at issue in *Herff Jones*, OAA seeks as close to "everything" (if not <u>actually</u> "everything") as one could get from a mobile phone provider.

When considering the privacy concerns inherent in such data – even when communication content is removed –, and when further considering the lack of any limitation to avoid inclusion of non-business communication data, the requests are either irrelevant to the matters alleged in this action or are so overbroad that they are disproportional to the needs of the case and impose undue annoyance and burden on the Defendants.  These problems are then compounded by the fact that these subpoenas are the first discovery device OAA opted to use in this case, even though depositions, interrogatories, or requests for production of materials issued to Defendants could yield the same, if not more useful, information with less of a privacy cost to Defendants.  The Court should therefore quash the subpoenas at issue and enter a protective order precluding discovery thereon.

## III.    THE SUBPOENAS' DEMAND FOR BILLS AND INVOICES ARE IRRELEVANT TO THIS CASE.

Finally, Items Nos. 3, 6, and 9 of each subpoena seek production of bills and invoices issued to each of the Defendants.  Materials that would be responsive to these requests do not appear to pertain to any claims or defenses alleged in this action.  Indeed, when considering that TAG does not have a mobile phone provider and that Torres and O'Neil use their cell phones for both personal and business purposes, these requests functionally only seek records of bills and expenses Torres and O'Neil deal with in their personal lives.  The fact these requests do not appeared tailored to this case whatsoever warrants an order quashing or forbidding the discovery sought with them.  *Herff Jones*, 2007 WL 2344705 at *3-5 (holding, in pertinent part, that cell phone billing records were not relevant to issues in case); *see also E.E.O.C. v. Unit Drilling Co.*, No. 13-CV-147-TCK-

PJC, 2014 WL 130551, *3-4 (N.D. Okla. Jan. 13, 2014) (unreported) (quashing subpoenas not "appropriately tailored to legitimate issues in the lawsuit").

**PRAYER FOR RELIEF**

WHEREFORE, Defendants Chris Torres, Daniel O'Neil, and The Affinities Group, LLC d/b/a TAG-The Affinities Group respectfully request the Court enter an Order quashing the five (5) subpoenas Plaintiff OAA proposes to serve in its Notice of Subpoena Duces Tecum [Doc. 72]; that the Court further enter a protective order precluding the discovery be had on OAA's subpoenas; that the Court award Defendants their reasonable costs and attorneys' fees in seeking the relief herein as may be allowed by law; and that the Court enter any other and further relief it deems just and proper in the premises.

Respectfully submitted,

CHRIS TORRES, DANIEL O'NEIL, and
THE AFFINITIES GROUP, d/b/a TAG-THE
AFFINITIES GROUP,
- Defendants

By:     /s/Tyler J. Coble
Tim N. Cheek – OBA #11257
D. Todd Riddles – OBA #15143
Gregory D. Winningham – OBA #22773
Tyler J. Coble – OBA #30526
CHEEK LAW FIRM, P.L.L.C.
311 North Harvey Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 272-0621
Facsimile: (405) 232-1707
tcheek@cheeklaw.com
triddles@cheeklaw.com
gwinningham@cheeklaw.com
tcoble@cheeklaw.com
ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of November, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

David A. Elder
Michael A. Furlong
ATTORNEYS FOR PLAINTIFF

          /s/Tyler J. Coble
         Tim N. Cheek/D. Todd Riddles
         Gregory D. Winningham/Tyler J. Coble