## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA AGENTS ALLIANCE, LLC, )<br>    an Oklahoma limited liability company, )<br>                           )<br>        Plaintiff/Counterclaim  )<br>        Defendant,  )<br>                           )<br>v.  )<br>                           )<br>CHRIS TORRES, an individual,  )<br>DANIEL O'NEIL, an individual,  )<br>THE AFFINITIES GROUP, LLC, d/b/a  )<br>    TAG-THE AFFINITIES GROUP, an  )<br>    Oklahoma limited liability company,  )<br>JOHN DOE COMPANY, a Colorado  )<br>    corporation,  )<br>                           )<br>        Defendants/Counterclaimants.  ) | Case No. CIV-17-1343-F |

## MOTION FOR PROTECTIVE ORDER

Plaintiff Oklahoma Agents Alliance, LLC ("OAA"), pursuant to Fed. R. Civ. P. 26(c) and LCvR 45.1(b), hereby objects to and respectfully requests this Court enter a protective order with respect to Defendants' Subpoena [Doc. No. 93], as detailed herein.

## INTRODUCTION

OAA objects to certain of the document requests stated in Exhibit 1 to the Subpoena. Specifically, OAA objects to production of a Settlement and Release Agreement entered into between OAA and Jim Jennings ("Mr. Jennings") in July 2019 because it is subject to a confidentiality agreement and is otherwise protected. Further, OAA objects to production of drafts of the Settlement and Release Agreement for the reasons herein stated. OAA also

objects to production of drafts of an affidavit executed by Mr. Jennings in October 2018 as protected attorney work product.  OAA does not object to Mr. Jennings' deposition.

The undersigned counsel conferred with Defendants' counsel by telephone on Thursday July 11, 2019.  Despite a thorough discussion of the issues presented herein, the parties did not reach an agreement.  Given the limited nature of this dispute and the desire to timely present it to the Court (noting that the dispositive motion deadline is currently September 1, 2019 and Defendants wish to depose Mr. Jennings before that date), OAA represents to the Court that an in-person conference would simply retread the exact same ground discussed on the telephone conference and respectfully requests that the Court waive the personal conference requirement of LCvR 37.1.  OAA understands that opposing counsel does not object to this request.

## FACTUAL BACKGROUND

To the best of OAA's knowledge, the following facts are undisputed.

Mr. Jennings is a former employee of OAA who was terminated in November 2018. Prior to his termination, Mr. Jennings made some statements regarding Defendants that were memorialized in an affidavit signed October 17, 2018.  A copy of the affidavit has already been produced by OAA to Defendants.  The undersigned counsel worked with OAA and Mr. Jennings to prepare the affidavit, to be signed by Mr. Jennings in his capacity as a then-current employee of OAA.  A single draft was circulated to Mr. Jennings and he requested certain changes.  The changes were made by the undersigned counsel and Mr. Jennings signed the revised draft.  Defendants have had a copy of Mr. Jennings' signed affidavit for some time.

After his termination, Mr. Jennings went to work for his daughter's insurance agency, of which he is a 10% owner.  The agency is a member of OAA.  A dispute arose in May 2019 between (i) Mr. Jennings and his daughter and (ii) their business partner, Jeremy Lay.  In the course of the dispute, OAA learned that Mr. Jennings had engaged in extensive communications with Defendants herein and other OAA members and employees since his termination from OAA.  Discussions ensued between Mr. Jennings and OAA regarding said activities and culminated in the Settlement and Release Agreement which Defendants now seek to examine.

## ARGUMENT AND AUTHORITY

**1.    THIS COURT SHOULD ENTER A PROTECTIVE ORDER BARRING PRODUCTION OF THE SETTLEMENT AND RELEASE AGREEMENT AND DRAFTS THEREOF.**

At the outset, OAA represents to the Court that the Settlement and Release Agreement with Mr. Jennings contains a confidentiality clause.  To OAA's knowledge, Mr. Jennings has not consented to production of the Settlement and Release Agreement and Defendants' counsel did not advise that Mr. Jennings had given such consent.  OAA objects to production of the Settlement and Release Agreement absent consent by all parties thereto to produce it.

With respect to production of the Settlement and Release Agreement and related negotiations more generally, the scope of discovery is limited as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues,

and whether the burden or expense of the proposed discovery outweighs its
likely benefit.

Fed. R. Civ. P. 26(b)(1), *see also In re MSTG, Inc.*, 675 F.3d 1337, 1346 (Fed. Cir. 2012)
(noting that Rule 26(b)(1) may be applied to limit discovery requests as necessary to
"protect the sanctity of settlement discussions and promote the compromise and settlement
of dispute").   OAA respectfully submits that the Settlement and Release Agreement and
drafts thereof are not relevant to the claims and defenses at issue in this case and that
production thereof is not proportional to the needs of this case.

This case revolves around admitted theft of OAA's trade secrets and confidential
and proprietary information by Defendants, misuse of the same, and breach of non-
solicitation covenants by Defendants Torres and O'Neil.   The Settlement and Release
Agreement pertained to alleged conduct <u>by Mr. Jennings</u>.   To be sure, there is some overlap
between Mr. Jennings' alleged activities and the activities of Defendants but information
regarding said overlapping activities can be obtained in discovery without disclosing the
confidential settlement terms between OAA and Mr. Jennings pertaining to Mr. Jennings'
own conduct.   Frankly, OAA can conceive of no legitimate reason why Defendants need
to see the terms of OAA's settlement with Mr. Jennings or drafts thereof in order to defend
this case.   In OAA's view, opposing counsel has not offered a legitimate reason why
Defendants need to see said documents.

Evidence of a settlement and negotiations of the same are generally inadmissible
"to prove or disprove the validity or amount of a dispute claim or to impeach by prior
inconsistent statement or a contradiction."   Fed R. Evid. 408.   Indeed, "the risks of

4

prejudice and confusion entailed in receiving settlement evidence are such that often . . . the underlying policy of Rule 408 require[s] exclusion even when a permissible purpose can be discerned." *EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1546 (10th Cir. 1991).

OAA recognizes the distinction between (i) discovery of the Settlement and Release Agreement and drafts thereof and (ii) admissibility of the same into evidence.  Nonetheless, OAA respectfully draws the Court's attention to the most recent Circuit Court of Appeals decision to opine on discovery of settlement agreements and related communications/negotiations.  In *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, the Sixth Circuit concluded that statements made in furtherance of settlement are privileged and protected from third-party discovery for the following reasons:

> There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations.  This is true whether settlement negotiations are done under the auspices of the court or informally between the parties.  The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system.  In order for settlement talks to be effective, parties must feel uninhibited in their communications.  Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of "impeachment evidence," by some future third party.  Parties must be able to abandon their adversarial tendencies to some degree.  They must be able to make hypothetical concessions, offer creative *quid pro quos*, and generally make statements that would otherwise belie their litigation efforts.  Without a privilege, parties would more often forego negotiations for the relative formality of trial.  Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

332 F.3d 976, 980 (6th Cir. 2003) (citing *Jaffee v. Redmond*, 518 U.S. 1 (1996) and *Trammel v. United States*, 445 U.S. 40 (1980)), *see also In re MSTG, Inc.*, 675 F.3d at 1348 (declining to recognize a settlement privilege in patent litigation but recognizing that many

"other courts have imposed heightened standards for discovery in order to protect confidential settlement discussions" (citing, e.g., *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011)).

Even if this Court does not agree with the Sixth Circuit that settlement agreements and negotiations are privileged, the *Goodyear* opinion provides a useful gloss on how Fed. R. Civ. P. 26(b)(1) should be applied with respect to the production of such documents. The balancing imposed by Rule 26(b)(1) with respect to production of settlement agreements is even more sensitive when a settlement with a non-party is involved. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicecenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662-63 (D. Kan. 2003) (concluding that the "status of a person as a non-party is a factor that weighs against disclosure"). In addition, settlement negotiations, as opposed to settlement agreements themselves, are subject to heightened protection and are regarded as less relevant because "[o]nce an agreement is reached, the negotiations are deemed to have merged into the agreement." *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368 (N.D. Ill. 2001).

Similar considerations apply here. After OAA learned of Mr. Jennings' activities in May 2019, there was a possibility that OAA might need to seek leave to add Mr. Jennings as a party to this case, in spite of the lateness of such request under the Amended Scheduling Order [Doc. No. 86]. Reaching a compromise and settlement with Mr. Jennings avoided any such complication and resulted in the furnishing of information that OAA anticipates will illuminate a number of issues in this case and be conducive to the

resolution thereof.[1]   It is unlikely that OAA and Mr. Jennings would have reached a settlement having these beneficial effects without agreeing to confidentiality with respect to the same.   Accordingly, OAA respectfully requests that this Court enter a protective order barring Mr. Jennings from producing the Settlement and Release Agreement and any drafts thereof.

In the alternative, if the Court determines that the Settlement and Release Agreement and/or any drafts thereof are subject to production, OAA respectfully requests that the Court review said documents *in camera* and permit redaction of the same in their entirety except for any portions the Court determines are directly relevant to the claims and defenses at issue and proportional to the needs of this case.

## 2. THIS COURT SHOULD ENTER A PROTECTIVE ORDER BARRING PRODUCTION OF THE DRAFT(S) OF MR. JENNINGS' AFFIDAVIT AS PROTECTED WORK PRODUCT.

It is well established that drafts of affidavits are attorney work product that are not subject to production.   To recap, the undersigned counsel prepared the draft affidavit for Mr. Jennings in his capacity as counsel for OAA while Mr. Jennings was still an employee of OAA.   A number of federal district courts have recognized that "draft affidavits" and "the evolution of an affidavit" are not discoverable.   *See*, *e.g.*, *Randleman v. Fidelity Nat. Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008) ("the trend is to consider draft affidavits and communications with counsel relating to affidavits as covered by the

---

[1] OAA is still in the process of gathering and evaluating said information, which consists of written communications and correspondence involving Defendants.   OAA intends to supplement its discovery responses to Defendants with such information as soon as practicable to the extent any such information proves to be relevant to this case.

attorney work product doctrine"); *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y. 2007) (holding that the creation of an affidavit is subject to the "attorney work product privilege"); *United States v. Univ. Hosp.*, 2007 WL 1665748, at *1 (S.D. Ohio Jun. 6, 2007) (stating that the court was "not aware of any case in which a court has permitted opposing counsel to question a witness about any role that counsel may have had in the evolution of an affidavit, about any communications with counsel relating to an affidavit, or about prior undisclosed drafts of an affidavit"), *Tuttle v. Tyco Electronics Installation Servs., Inc.*, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007) ("the work product doctrine does protect information relevant to the evolution of an affidavit, including but not limited to communications with the counsel relating to the affidavit, prior drafts of the affidavit, and any notes made by counsel while engaging in the process of drafting the affidavit." (emphasis added)); *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 608-09 (D. Nev. 2005) (holding that draft affidavits are protected by the work product doctrine).

The above-cited decisions make sense when one considers that only an affidavit signed by a party is that party's sworn testimony.  Prior drafts which are altered before execution may contain inaccurate information that the affiant sought to have corrected before signing under oath, while simultaneously revealing the mental processes and strategy of the drafting lawyer:

> Draft affidavits reflect not so much what the witness has said but rather the drafting lawyer's impression of what the witness had said. . . . [T]he changes such drafts undergo before being signed by the witness may well reveal the drafting lawyer's mental impressions and strategy.  Accordingly, unexecuted drafts of affidavits are protected by the work product privilege.

*Burlington v. News Corp.*, 2010 WL 11474545, n.1 (E.D. Pa. Jun. 7, 2010), *see also Innovation Ventures, LLC, v. Aspen Fitness Prods., Inc.*, 2014 WL 2763645, at * 3 (E.D. Mich. Jun. 18, 2014) (concluding that "unsigned draft affidavits . . . do not reflect statements of fact by [the signatory]; rather, they were prepared by counsel and presented to [the signatory] for his review and correction. They are part of the evolution and development of the final draft. As such, the drafts constitute the attorney's trial preparation materials."). Indeed, an attorney preparing an affidavit has an ethical duty to ensure that a party does not sign an inaccurate affidavit. The attorney should be encouraged to undertake as many drafts as are necessary to ensure accurate testimony without fear that previous versions might be later used (i) to discover the attorney's mental processes or (ii) against the party proffering the affidavit to argue that discrepancies between various drafts call into question the validity of the signed affidavit.

One final point bears mentioning: like the individual Defendants herein, Mr. Jennings' employee agreement with OAA did not permit him to take documents and records of OAA with him upon his termination. Therefore, if Mr. Jennings retained copies of his draft affidavit upon leaving OAA, it is not appropriate for him to possess said document(s) and Defendants should not be permitted to benefit from any such improper document retention by Mr. Jennings. To be clear, OAA has no objection to Mr. Jennings possessing his final, signed affidavit as a record of his sworn testimony but does object to his possession or production of any prior draft(s) of the same.

For the foregoing reasons, this Court should enter a protective order barring Mr. Jennings from producing any drafts of his October 2018 affidavit.

**<u>CONCLUSION</u>**

Wherefore, in light of the foregoing, OAA respectfully requests that this Court enter a protective order barring Mr. Jennings from producing the Settlement and Release Agreement, any drafts thereof, and any drafts of his October 2018 affidavit.

Respectfully submitted,

s/  Michael A. Furlong
David A. Elder, OBA # 20687
Michael A. Furlong, OBA # 31063
Michael P. Whaley, OBA # 33640
HARTZOG CONGER CASON LLP
201 Robert S. Kerr Avenue
Suite 1600
Oklahoma City, Oklahoma 73102
(405) 235-7000 | (405) 996-3043 (fax)
delder@hartzoglaw.com
mfurlong@hartzoglaw.com
mwhaley@hartzoglaw.com
**ATTORNEYS FOR PLAINTIFF AND COUNTERCLAIM DEFENDANT OKLAHOMA AGENTS ALLIANCE, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July, 2019, I electronically transmitted the attached document to the following:

D. Todd Riddles
triddles@cheeklaw.com

Gregory D. Winningham
gwinningham@cheeklaw.com

Tim N. Cheek
tcheek@cheeklaw.com

Tyler J. Coble
tcoble@cheeklaw.com

**ATTORNEYS FOR DEFENDANTS/
COUNTERCLAIMANTS CHRIS TORRES
DANIEL O'NEIL AND THE AFFINITIES
GROUP, LLC**

s/ Michael A Furlong
Michael A. Furlong